(C. D. 754)

PACIFIC CUSTOMS BROKERAGE CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 31, 1943)

*Strauss & Hedges; Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel), for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks* and *Joseph B. Brady*, special attorneys), for the defendant.

Before OLIVER, WALKER, and COLE, Judges

WALKER, Judge: These protests are directed against the action of the collector of customs at the port of Portland, Maine, in assessing duty at the rate of 10 per centum ad valorem under paragraph 406 of the Tariff Act of 1930, or 5 per centum under the same paragraph as amended by the Canadian Trade Agreement reported in T. D. 49752, on certain so-called dimension stock, claiming the same to be entitled to free entry under paragraph 1803 of the same act as "sawed lumber" and subject to duty or tax only at the rate of $1.50 per thousand feet, board measure, under the provision for "lumber" in section 601 (c) (6) of the Revenue Act of 1932 as amended by the Canadian Trade Agreement reported as above or in T. D. 48033.

Paragraph 406, *supra*, provides for—

Hubs for wheels, heading bolts, stave bolts, last blocks, wagon blocks, oar blocks, heading blocks, and all like blocks or sticks, roughhewn, or rough shaped, sawed or bored * * * .

A similar issue was before this court and was passed upon favorably to the claim of the plaintiff in the case of *Pacific Customs Brokerage Co.* v. *United States*, 5 Cust. Ct. 146, C. D. 387, and it was stipulated by counsel for the parties herein that the merchandise and the issues are the same in all material respects in the cases at bar as in said C. D. 387.

Although there are nine entries involved in the cases at bar, further evidence was offered on behalf of the plaintiff affecting only four of such entries, and on behalf of the defendant only three.

The merchandise involved in the incorporated case, C. D. .387, was shown by the evidence therein to be sticks "cut in random widths and lengths and [to] have a great many uses in the manufacture of furniture, and are not dedicated to any specific use."

In the case at bar, Hy Abrahamson, manager of the factory of the Canada Broom Handle Co., of Burlington, Vt., the ultimate consignees and actual importers of some of the merchandise in issue, took the stand for the plaintiff and testified that the merchandise covered by entries V–550 (protest 22303–K), V–241, V–319 (protest 993884–G), and V–256 (protest 25795–K) consisted of hardwood squares and was ordered as such. The term "squares" apparently refers to the fact that width and thickness were the same.

This witness testified on direct examination that the merchandise covered by the entries enumerated was not ordered in specified sizes, but he admitted on cross-examination that the offers, upon which the merchandise was ordered, did "say how long the lumber would be," giving the length, diameter, and thickness.

Defendant's witness McPhetres, a customs agent, testified that he had made an investigation concerning the use of the merchandise covered by entries V–550, V–241, and V–256, and in the course of such investigation visited the Canada Broom Handle Co.'s plant at Burlington. He spoke with Mr. Abrahamson, he said, who at that time told him that the company had—

standing orders with certain companies for merchandise of various lengths. With some concerns they had a standing order, which ships them a carload periodically of various lengths they have on stock * * * .

and it appears that the "various lengths" were specific lengths such as 24, 39, 42, 45, and 48 inches, and, in at least one case, 18 and 54 inches.

The record indicates that merchandise such as that covered by the enumerated entries is used, by the Canada Broom Handle Co. at least, as material for the manufacture, by processes employing wood

turning and boring machines, into such articles as broom handles, brush handles, plunger handles, and kitchen utensil handles.

On the question of whether each imported piece is used in the length in which imported for the manufacture of such articles, the testimony of the witnesses is somewhat at variance. The testimony of Mr. Abrahamson would indicate that the question of whether a piece would be used in the condition as imported or be cut up into smaller pieces depended upon the type of orders on hand and the sizes had in stock. On the other hand, Mr. McPhetres stated that Mr. Abrahamson had previously told him—

that the 24 to 30 inch stock was used as plunger handles; the 36 inch stock for rake or hoe handles; the 39 and 42 inch for broom handles; the 45 and 48 chiefly used for pusher broom handles, and that the smaller handles were made from waste or rejects, which after inspection was thrown out for stains or breakage, and that stock was used for smaller handles, toys, dish mops, etc.

We think it is obvious that for the purpose of economy in cost of material and freight charges it would be natural that the importer would purchase and import his material in sizes which could be used in his manufacturing business with a minimum of waste. In our view, however, the mere fact that wherever possible the importer ordered and used such material did not *ipso facto* place the merchandise in the category of "like blocks or sticks" to those specified by name in paragraph 406, *supra*. It would, we think, be an unwarranted extension of the provisions of paragraph 406 to hold that every piece of wood which could be used in its dimensions as imported for manufacture into an article would be a "like block or stick" to those enumerated. Those blocks or sticks which are enumerated are obviously ones which have been selected and cut or shaped solely with the view of ultimately producing articles such as lasts, oars, etc. There is an element of dedication to a specific use which is absent in the merchandise at bar, which, after all, is nothing more than a common size of wood which, even when cut to specific lengths, is susceptible of use, and apparently is used, for a variety of purposes.

There can be no question but that if the merchandise at bar was in random lengths or lengths longer than needed to make one article per piece it would not be dutiable under paragraph 406. Simply cutting it to length did not divest it of its character as material undedicated to a specific use; it made it more convenient to handle, ship, and use.

In the brief filed on behalf of the defendant it is urged that so-called "dimension stock" such as is here involved, is not properly classified as lumber, and in support of this proposition certain testimony of a witness in the incorporated case was quoted as well as some excerpts from a publication of the United States Department of Commerce entitled "American Hardwood, Dimension, Solid Wall Paneling and Interior Trim," by W. LeRoy Neubrech.

We think it sufficient to say that the statements relied upon purport to reflect an understanding of the meaning of the terms "lumber" and "dimension" in the trade and commerce of the United States. In our decision in the incorporated case, reported as C. D. 387, we determined that the common meaning of the term "lumber" encompassed merchandise such as that involved. If the meaning of that term as understood commercially differs from the common meaning as we determined it, that fact has not been established in accordance with the well-settled rules for proving commercial designation. See also, in this connection, *United States* v. *Gallagher & Ascher*, 12 Ct. Cust. Appls. 472, T. D. 40670.

On the record made the claim for free entry of the merchandise involved under the provisions of paragraph 1803 of the Tariff Act of 1930, with assessment of tax or duty at the rate of $1.50 per thousand feet, board measure, under the provisions of section 601 (c) (6) of the Revenue Act of 1932, as amended, is sustained in each case, and judgment will issue accordingly.